Pregerson, J.,
dissenting:
I dissent.
In 1990, at the age of 10, Carlos Fabricio Alvarez-Leal was brought to the United States from Mexico by his father. Carlos’s father obtained amnesty from the United States in the late 1980s and was thereafter able to bring Carlos and the rest of his family to this country on visitor visas. Carlos’s father became a United States citizen in 2003. Carlos’s two brothers also became United States citizens, and his mother and sister are now lawful permanent residents.
Unfortunately, immigration relief evaded Carlos. He arrived in the United States two years too late to qualify for Family Unity Benefits.[1] He reached age 21 three years too early to be eligible for relief under the Child Status Protection Act.[2] And he missed the eligibility criteria for Deferred Action for Childhood Arrivals by one year.[3] Carlos also applied for adjustment of status based on his father’s United States citizenship status, but his visa priority date is still years away from becoming current.[4]
Despite these setbacks, Carlos has contributed to the betterment of our society for the last 26 years. Carlos grew up in San Diego, where he graduated from Hoover High School. After graduation, Carlos began working as a package handler and forklift operator. He has since worked as a carpenter, a security guard, and in the *632 food service industry. He pays taxes and supports his family.
Carlos met his partner Lilian in high school. They have been together for 16 years. On March 17, 2009, Carlos and Lilian’s daughter, Daisy, was born in San Diego. Daisy is a United States citizen by birth. She is now seven years old, about to turn eight.
On January 18, 2010, Carlos made a mistake: he was arrested for driving under the influence of alcohol. No one was hurt. Carlos pled guilty, completed probation, and his record was expunged. This is Carlos’s sole encounter with our justice system.
Directly after his arrest, Carlos spent one week in jail. During that time, federal immigration authorities learned that Carlos lacked legal status. On January 25, 2010, Carlos was served with a Notice to Appear before an immigration judge (“IJ”) in San Diego, which charged him as removable for overstaying his visa.[5]
Before an IJ, Carlos conceded remova-bility, but requested cancellation of removal based on “exceptional and extremely unusual hardship” to Daisy, his United States citizen daughter.[6] After the merits hearing, the IJ issued an oral decision denying cancellation of removal relief. The IJ found that Carlos failed to show the requisite degree of hardship because Carlos could move to Tijuana, Mexico, where his geographic proximity to his daughter, Daisy, would minimize the severity of their separation. Carlos appealed to the Board of Immigration Appeals, and then to our court.
We referred Carlos’s case to mediation in the hopes that the government would exercise prosecutorial discretion. For decades, the federal government’s mechanism for exercising prosecutorial discretion in the context of immigration enforcement has been deferred action, the formal determination not to remove a particular individual.[7] On November 20, 2014, the Department of Homeland Security expanded deferred action. Via the Johnson Memorandum, the government extended its policy of exercising prosecutorial discretion to apply to individuals who, among other things, have a United States citizen child and have continuously resided in the United States since before January 1, 2010.[8] Recognizing that Carlos met these qualifications-, we hoped that mediation would prove successful. But, after nearly a year, mediation failed and Carlos’s case was returned to us.
Despite the equities in this case, the government has chosen to remove Carlos to a country that he has not known for 26 years and that he fears. Carlos testified as to the widespread violence in Mexico. His fears of pervasive kidnappings, murders, and cartel violence have been well docu- *633 merited, both at the time of his hearing in 2011 and today.[9]
Fearing for his daughter’s personal safety, Carlos is now forced to take a step no father should have to take: he will separate from his daughter. He refuses to take her to a country where violence against women and girls remains prevalent and human rights violations are committed with impunity.[10] Effectively, the government’s decision to prosecute Carlos is a decision to tear this family apart. I decline to be a party to this harsh result.

. See 8 C.F.R. § 236.12 (2016).

. See Child Status Protection Act, Pub. L. No. 107-208, 116 Stat. 927 (2002) (codified as amended in scattered sections of 8 U.S.C.), https://www.gpo.gov/fdsys/pkg/PLAW-107publ 208/pd£/PLAW-107publ208.pdf.

. See Memorandum from Janet Napolitano, Sec’y of Dep’t of Homeland Sec., Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children (June 15, 2012), https://www.dhs. gov/xlibrary/assets/slexercising-prosecutorial-discretion-individuals-who-came-to-us-as-children.pdf; see also Memorandum from Jeh Charles Johnson, Sec'y of Dep’t of Homeland Sec., Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who Are the Parents of U.S. Citizens or Permanent Residents (Nov. 20, 2014), https://www.dhs.gov/sites/default/ files/publications/14_1120_memo_deferrecL acti on.pdf.

. See, e.g., Visa Bulletin for February 2017, Bureau of Consular Affairs, United States Dep’t of State, https://travel.state.gov/content/ visas/en/law-andpolicy/bulletin/2 017/vis a-bulletin-for-february-2017.html.

. See 8 U.S.C. § 1227(a)(1)(B) (2016) ("Any alien who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa ... has been revoked trader section 1201(i) of this title, is deportable.”).

. See 8 U.S.C. § 1229b(b)(1)(D) (2016) (outlining eligibility criteria for cancellation of removal relief).

. Anil Kalhan, Deferred Action, Supervised Enforcement Discretion, and the Rule of Law Basis for Executive Action on Immigration, 63 UCLA L. Rev. Disc. 58, 66-67 (2015).

.Memorandum from Jeh Charles Johnson, Sec'y of Dep’t of Homeland Sec., Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who Are the Parents of U.S. Citizens or Permanent Residents (Nov, 20, 2014), https:// www.dhs.gov/sites/default/files/publications/ 14_1120_memo_deferred_action.pdf.

. See, e.g., Bureau of Democracy, Human Rights and Labor, United States Dep’t of State, 2015 Country Reports on Human Rights Practices—Mexico (Apr. 13, 2016) ("Impunity and corruption in the law enforcement and justice system remained serious problems. Organized criminal groups killed, kidnapped, and intimidated citizens, migrants, journalists, and human rights defenders.”), https:// www.justice.gov/sites/default/files/pages/ attachments/2016/04/15/doshrr_2015_mexico. pdf; Bureau of Democracy, Human Rights and Labor, United States Dep’t of State, 2011 Country Reports on Human Rights Practices— Mexico (May 24, 2012) ("Transnational Criminal Organizations remained the most significant perpetrator of violent crimes in the country, showing disregard for civilian casualties, engaging in human trafficking, and intimidating journalists and human rights defenders with violence and threats. ... The following problems also were reported during the year by the country’s National Human Rights Commission (CNDH) and other sources: kidnappings; physical abuse; poor, overcrowded prison conditions; arbitrary arrest and detention; corruption and lack of transparency that engendered impunity within the judicial system; and confessions coerced through torture.”), https://www.justice.gov/sites/default/ files/eoir/legacy/2013/06/10/mexico_l .pdf.

. Amnesty Int’l, The State of the World’s Human Rights 2015/16 Report 249, 251 (Feb. 23, 2016) ("Impunity persisted for grave human rights violations including torture and other ill-treatment, enforced disappearances and extrajudicial executions. ... Violence against women and girls remained endemic, including killings, abductions, and sexual violence.”), https://www.amnesty.org/en/ documents/pol 10/25 52/2016/en/.